IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD DICKISON,                                    Civil No. 06-108-AA
                                                    OPINION AND ORDER

            Plaintiff,

      vs.

WAL-MART STORES, INC., a
Delaware corporation; AIG
DOMESTIC CLAIMS, INC., a
Delaware corporation, d.b.a.
AIG Claim Services f.k.a. AIG
Claim Services, Inc.,

            Defendants.
_____

Kerry M.L. Smith
Smith & Fjelstad
722 N. Main Avenue
Gresham, Oregon 97030
      Attorney for plaintiff

Kari A. Furnanz
Hoffman, Hart & Wagner, LLP
1000 SW Broadway, 20th floor
Portland, Oregon 97205
      Attorney for defendant AIG Domestic Claims, Inc.

AIKEN, Judge:

Page 1 - OPINION AND ORDER

Defendant AIG Domestic Claims, Inc. (AIGDC) files a motion to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). Defendant's motion is granted and this case is dismissed as to defendant AIGDC only.

BACKGROUND

Plaintiff was employed by defendant Wal-Mart Stores, Inc. (Wal-Mart). Plaintiff's Amended Complaint, ¶ 9. On or about October 28, 2004, plaintiff suffered an on-the-job injury while working for Wal-Mart. Id. at ¶ 10. Between the date of plaintiff's injury and November 30, 2004, the date plaintiff was released to return to full duty work, AIGDC conducted a background check on plaintiff. Id. at ¶¶ 11, 12. AIGDC provided the results of the background check to Wal-Mart, and in response to that information, Wal-Mart terminated plaintiff. Id. at ¶¶ 13, 14.

Plaintiff alleges that at no time did he "consent" to defendant conducting the background check and/or to Wal-Mart reviewing the contents of the background check provided to it by the defendant. Id. at ¶ 15.

STANDARDS

Under Fed. R. Civ. P. 12(b)(6), dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Litchfield v.

Page 2 - OPINION AND ORDER

Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984), cert. denied, 470
U.S. 1052 (1985).  For the purpose of the motion to dismiss, the
complaint is liberally construed in favor of the plaintiffs, and
its allegations are taken as true.  Rosen v. Walters, 719 F.2d
1422, 1424 (9th Cir. 1983).

DISCUSSION

     Plaintiff alleges three claims against defendant AIGDC.[1]
Plaintiff's first claim is pursuant to the Fair Credit Reporting
Act, 15 U.S.C. § 1681a et seq.  Plaintiff alleges that he is a
"consumer" and AIGDC is a "Consumer Reporting Agency" as those
terms are defined by the Act.  Plaintiff's Amended Complaint,
¶¶ 18, 19.  Plaintiff further alleges that AIGDC's background
check was a "consumer report" and/or a "investigative consumer
report" as those terms are defined by the Act.  Id. at ¶ 20.
Plaintiff alleges that he did not consent to AIGDC preparing a
"consumer report" or a "investigative consumer report" on
himself, nor did he consent to AIGDC furnishing the report to
Wal-Mart.  Id. at
¶¶ 21, 22.  Plaintiff alleges that neither AIGDC or Wal-Mart
disclosed to plaintiff that they intended to procure or use a
consumer report or investigative consumer report regarding
plaintiff, nor did either defendant disclose a copy of the report

_____

     [1] Plaintiff alleges other claims against defendant Wal-Mart which are not the subject of
the motion at bar and will not be discussed here.

Page 3 - OPINION AND ORDER

to plaintiff prior to using the report to take adverse employment action against the plaintiff. Id. at ¶¶ 23, 24.

Plaintiff contends that AIGDC's failure to comply with 15 U.S.C. § 1681 was willful as well as negligent. Id. at ¶¶ 26, 27. Finally, plaintiff contends that AIGDC's actions were part of a "pattern and practice" of violation of § 1681, and requests that the court enter a permanent injunction prohibiting defendant from engaging in such conduct in the future. Id. at ¶ 28.

AIGDC asserts that it investigated plaintiff's workers' compensation claim and provided that investigative information to its insured (defendant Wal-Mart here). The purpose of the FCRA is to protect consumers from the transmission of inaccurate information about them. Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995). The court notes that plaintiff does not contend that AIGDC provided false information to its insured, rather plaintiff contends only that certain technical obligations of the Act were violated.

Plaintiff's allegation that AIGDC violated the FCRA by conducting a background check that fell within the definition of a "consumer report" and/or an "investigative consumer report," is misplaced. Plaintiff's Amended Complaint, ¶ 20. The term "consumer report" is defined as:

> [A]ny written, oral, or other communication of any
> information by a consumer reporting agency bearing on
> a consumer's credit worthiness, credit standing,
> credit capacity, character, general reputation,

> personal characteristics, or mode of living which is
> used or expected to be used or collected in whole or in
> part for the purpose of serving as a factor in establishing
> the consumer's eligibility for -
> (A) credit or insurance to be used primarily for personal,
> family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of
> this title.

15 U.S.C. § 1681a(d).

Further, the term "employment purposes" under subsection (B)

above means a report used for the purpose of evaluating a

consumer for employment, promotion, reassignment or retention as

an employee.  16 U.S.C. § 1681a(f).

An "investigative consumer report" is defined by § 1681a(e).

That section provides:

> The term "investigative consumer report" means a
> consumer report or portion thereof in which
> information on a consumer's character, general
> reputation, personal characteristics, or mode of
> living is obtained through personal interviews with
> neighbors, friends, or associates of the consumer
> reported on or with others with whom he is acquainted
> or who may have knowledge concerning any such items
> of information.

Id.

The court in Hovater v. Equifax, Inc., 823 F.2d 413 (11th

Cir.), cert. denied, 484 U.S. 977 (1987), in circumstances

similar to the case at bar, held that the FCRA did not apply

where the report was issued by a credit reporting agency to an

insurer solely for use in evaluating the insured's claim for

benefits under an existing policy.  Id. at 416.  Specifically,

Page 5 - OPINION AND ORDER

the court examined whether defendant Equifax's report to the
insurance company was a "consumer report" governed by the FCRA,
and held that it was not.  Id. at 417.  Hovater held:
"[c]onsidering the Act's definitional sections, it is clear that
a transference of information by a credit reporting agency to an
insurance company for the sole intended purpose of evaluating a
claim for insurance benefits under an existing policy is not a
"consumer report" nor an "investigative consumer report" under
the Act."  Id. at 418.  The court noted that the definitional
phrases in the Act concern a consumer's ability to get and keep
insurance, they do not relate to information that is collected or
transferred for the purpose of evaluating an insured's claim for
benefits under an existing policy.  Id. at 419.

    Hovater looked to Congress's intent in drafting the
legislation and noted that Congress had

> expressly discussed insurance in both definitional
> sections of the Act.  See §§ 1681a, 1681b.  In so
> doing, Congress spoke in terms of information relating
> specifically to the inception and maintenance of the
> insurance contract.  As Congress declined in it explicit
> treatment of the subject of insurance to regulate
> insurance claims reports, we decline the opportunity
> to do so by reading the catch-all provision of Section
> 1681b(3)(E) to effectuate that end.

Id.

    Hovater next examined the legislative history behind the Act
and concluded that Congress did not intend to regulate insurance
claims reports.  Id.; Hearings Before the Subcommittee on

Page 6 - OPINION AND ORDER

Financial Institutions of the Comm. on Banking and Currency, 91st Cong., 1 Sess. (1969); and Hearings on H.R. 16340 Before the Subcommittee on Consumer Affairs of the Comm. on Banking and Currency, 91st Cong., 2d Sess. (1970).  Hovater found that Congress envisioned the Act as having a limited reach based in part on the events subsequent to the bill's enactment.

> During Senate Subcommittee hearings in 1973, Senator Proxmire, who authored the Senate Version of the FCRA, chaired the Senate Subcommittee considering it, and guided the legislation through the House-Senate conference, considered whether the Act should be broadened to include insurance claims reports.  Two years later, Senator Proxmire proposed legislation which would have expanded the Act to cover "general investigative reports."  When that legislation failed, Senator Proxmire renewed his effort to expand the Act in 1979, seeking specifically to include insurance claim reports in the definition of "consumer reports." However, like the amendment proposed in 1975, the 1979 amendment never became law.  The inference that springs from this chain of events is that Congress did not believe that insurance claims reports were governed by the FCRA.  Congress' refusal to revise the law indicates that it was content with that interpretation of the Act.

Id. at 419-20 (internal citations omitted).

Moreover, Hovater noted that the Federal Trade Commission (FTC) was designated by Congress to enforce the Act.  In 1971, the FTC issued a question and answer pamphlet addressing several issues that had arisen soon after the Act had taken effect.  One of the questions was whether "claims reports" or "adjustment reports" or other reports obtained by an insurer in connection with an insurance claim were considered a "consumer report."  The

FTC's answer was clearly, "no." Id. at 420.  Hovater underscored the significance of the FTC's interpretation in light of the fact that Congress, certainly aware of the FTC's published response, chose not to amend the Act to cover precisely what the FTC has said the Act excludes.  Id.

I am further persuaded by Kemp v. County of Orange, 211 Cal.App.3d 1422, 260 Cal. Rptr. 131 (1989).  There, the court held that an insurance claim report prepared to evaluate plaintiffs' workers' compensation claim was not a "consumer report" and therefore not subject to the FCRA.  Id. at 1424.  The court further noted that "[t]his question has been squarely presented to several courts, and the clear majority has held such a report does not fall with the Act's regulation." Id.

Therefore, I find that plaintiff's claim against defendant AIGDC pursuant to the FCRA fails and defendant's motion to dismiss this claim is granted with prejudice.

Plaintiff next alleges a claim against defendant AIGDC for intentional interference with economic relations based on defendant's obtaining and providing a consumer report and/or investigative consumer report to Wal-Mart.  Plaintiff's Amended Complaint, ¶ 50.  Plaintiff further alleges that defendant used improper means and/or had an improper motive for interfering with plaintiff's employment with Wal-Mart.  Id.
///

Page 8 - OPINION AND ORDER

To state a prima facie case of intentional interference with economic relations, a plaintiff must allege: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a casual effect between the interference and the harm to the relationship or prospective advantage; and (6) damages.  Allen v. Hall, 328 Or. 276, 281, 974 P.2d 199 (1999).

Plaintiff's claim fails as a matter of law based on his failure to plead the requisite elements of this claim.  First, I find no allegation that AIGDC was a third party to plaintiff's employment relationship with Wal-Mart.  A claim for intentional interference with economic relations is available only against a third party to the transaction or relationship.  Sakelaris v. Mayfair Realty, Inc., 284 Or. 581, 588, 588 P.2d 23 (1978).  An agent who acts "within the scope of his authority and with the intent to benefit the principal . . . is not liable to a third party for intentional interference with contract."  Welch v. Bancorp Management Advisors, Inc., 296 Or. 208, 216-17, 675 P.2d 172 (1983).  AIGDC was an agent for Wal-Mart acting with the scope of its authority to benefit Wal-Mart in investigating plaintiff's insurance claim.  "When a liability insurer undertakes to 'defend' it agrees to provide legal representation and to stand in the shoes of the party who has been sued."

<u>Georgetown Realty v. The Home Ins. Co.</u>, 313 Or. 97, 110, 831 P.2d 7 (1992)(footnote and internal citations omitted). I find no allegations to suggest that AIGDC was acting outside of its role in providing workers' compensation claims coverage for Wal-Mart. Further, I find no suggestion by plaintiff that AIGDC conducted a background check and provided it to Wal-mart for AIGDC's own purposes. Therefore, AIGDC was not a third party to plaintiff's relationship with Wal-Mart.

Moreover, I find no allegation by plaintiff of AIGDC's improper motive or improper means. If plaintiff is alleging that the improper means related to a violation of the FCRA, this court has rejected that basis and found no violation of the statute. Similarly, I find no allegation of intentional interference by AIGDC in plaintiff's employment relationship with Wal-Mart. Plaintiff alleges only that his termination was the "result of conduct" by AIGDC. "To be actionable an interference must be a knowing and not an inadvertent or accidental invasion of plaintiff's . . . interests." <u>Wampler v. Palmerton</u>, 250 Or. 65, 73, 439 P.2d 601 (1968). "[I]ncidental interference . . . is not actionable." <u>Empire Fire & Marine Ins. Co. v. Fremont Indemnity Co.</u>, 90 Or. App. 56, 63, 750 P.2d 1178 (1988).

Therefore, defendant's motion to dismiss plaintiff's claim for intentional interference with economic relations is dismissed without prejudice.

Page 10 - OPINION AND ORDER

Defendant AIGDC also moves to dismiss plaintiff's claim for intentional infliction of severe emotional distress (IIED). Plaintiff alleges that AIGDC's conduct exceeded the bounds of all socially tolerable conduct.  Plaintiff's Amended Complaint, ¶ 54.

To state a claim for IIED, plaintiff must show that: (1) defendant intended to inflict severe emotional distress on the plaintiff; (2) defendant's acts were the cause of plaintiff's severe emotional distress; and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.  McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995).

Defendant's motion to dismiss this claim is granted without prejudice.  Plaintiff fails to plead that AIGDC intended to inflict any emotional distress on the plaintiff.  There are no allegations that AIGDC caused plaintiff any emotional distress separate from Wal-Mart's decision to terminate the plaintiff.  I find no allegations that AIGDC made or participated in Wal-Mart's employment decision, or even influenced Wal-Mart's decision. Finally, I find no allegation that AIGDC's actions were anything other than conduct falling within the range of actions expected from an insurer.  Here, AIGDC reported the results of its workers' compensation investigation to its insured, an action within the scope of what AIGDC was retained by Wal-Mart to do in

providing workers' compensation claims coverage.  I find no
allegation of any action by AIGDC that was "so extreme in degree,
as to go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized
community."  Christofferson v. Church of Scientology, 57 Or. App.
203, 211, 644 P.2d 577 (1982), cert. denied, 459 U.S. 1206
(1983)(internal quotation omitted).  Therefore, defendant's
motion to dismiss plaintiff's IIED claim against AIGDC is
granted.

CONCLUSION

Defendant AIGDC's motion to dismiss (doc. 11) is granted as
follows: defendant's motion to dismiss plaintiff's claim of
violation of the Fair Credit Reporting Act (Claim One, Count I)
is granted and that claim is dismissed against defendant AIGDC
with prejudice. Further, plaintiff's request that the court enter
a permanent injunction against the defendant pursuant to
plaintiff's Claim One, Count I, is denied as moot.

Next, defendant's motion to dismiss plaintiff's claim for
intentional interference with economic relations (Claim Four)
against defendant AIGDC is granted and that claim is dismissed
without prejudice.

Finally, defendant's motion to dismiss plaintiff's claim for
IIED (Claim Five) against defendant AIGDC is granted and that
claim is dismissed without prejudice.

Defendant's request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this __16__ day of May 2006.


_____/s/ Ann Aiken_____
Ann Aiken
United States District Judge

Page 13 - OPINION AND ORDER